Good morning, your honors. My name is Robert Abel, and I represent Jafari Moore in this case. May it please the court. Your honors, the key issue that I asked the court to focus on was the trial judge's decision to not permit Mr. Moore to have the jury consider his justification defense. This is a, Mr. Moore was charged in the trial we had with being a felon in possession. And really, the sole issue with regard to whether or not he presented a prima facie case sufficient to warrant his justification defense being submitted to the jury regarded the fifth element of that defense. The other four were not contested. And the fifth element is that the individual did not possess the gun any longer than necessary. And the rationale of the court below was that Mr. Moore had not, when the car he was riding in was stopped just a few minutes, no more than four, perhaps closer to two, after this incident in this parking lot, did not at that time recite the events and circumstances that happened in the parking lot at this nightclub. Or later, after he'd been told at the police station that he was going to be charged as a felon in possession, that he did not at that time basically confess or offer a recitation of the events or say, hold on, here's what happened. You guys need to know that. That requirement that a defendant come forward with an exculpatory explanation is a precondition to— That's not quite true, right? I mean, you can just hand the gun over. I mean, there were chances to obviously leave the gun at the scene, throw it out the window, give it to the police, just give it to the police. When the police were there, drive to the police station. So the idea that you have to confess to invoke it isn't quite true, right? But you're suggesting the scenario that this court considered in the Clark case. It's an unpublished decision. It took place in a nightclub in Tennessee. And there the court said, Clark, they had an incident in the nightclub. The nightclub kicked everybody out. Out in the parking lot, a couple people took a shot or somebody took a shot at Clark. He ran back in the club. The DJ at the club gave him his gun. He went back out. In the meantime, the police had arrived. And the government had argued there. He'd had opportunity to dispose of the gun in some means in between. But a jury could consider, given the situation, whether or not his conduct was reasonable. And I think that comes into play here, Judge Sutton. You've got just a few minutes. Moore has been confronted with a gun stuck literally in his face, his life put in danger. And within a few minutes, he hops in the car. They drive off. They have no discussion in the car about what has happened, what's gone on. He testified at trial. He remained stunned and frightened. I mean, I guess the two main themes to me are that the courts seem a little skeptical of this defense. All right? I guess you could imagine why, OK? That people are going to, every time they're caught in possession, they're going to make something up as to why they have to have it. So, I mean, that's what the case law says. There's some skepticism about it. And then it says, as soon as possible. And so I take the as soon as possible to be part of the dealing with the skepticism courts seem to have about this defense. So it's just really hard to look at this evidence and say he dealt with the problem as soon as possible. Well, first of all, with regard to the skepticism, the court has specified that a traumaphagia case is sufficient, even if of doubtful credibility. I would agree with you that the- Well, I'm just going to quote you the language. I mean, if you're not going to, rare situations, that's the language from our cases. And I respectfully submit, Judge, this is a rare situation. I think a jury should be able to consider the reasonableness of Mr. Moore's actions at the time. If they believe, we obviously have two very differing versions about what happened in this parking lot. If they truly believe, without provocation, his life was put in danger, he reacted instinctively, arguably instinctively. Other people would react differently, I would agree. But he reacted in a way to disarm his assailant, reasonably believing his life in danger. And just a very few minutes later, less than five minutes later, after that terrifying incident, did not do what you've suggested. Tell Officer Terry, here's the gun, I've got it. Was that reasonable for him to do in that scenario? I think that's a jury question that they should ponder and be able to pass on. If they believe- Explain what happened, but also affirmatively lied? Because he didn't have to do that, but was the district court judge allowed to factor that in? I think a jury certainly should be able to consider that, but I don't think- I'm asking whether the district court judge was allowed to factor that in and whether to give the instruction. The case law says, present a prima facie case, even if dealt for credibility. What you're speaking to casts doubt on the credibility of the defense, but not too much to be a forfeiture. I think it is something for a jury to- Prima facie case, am I getting this wrong? The prima facie case includes only as long as necessary, right? Yes, sir. So the lying goes to that, right? I mean, this kind of support. The lying shows this wasn't just the two minute phenomenon. He's still in a state of shock and didn't have time, effectively, to do something. The lying seems to me to really cut against the as soon as necessary. You're speaking of statements that Mr. Moore made at the police station after he'd been told he was going to be charged. Yeah. Okay. But that's also long after his possession of the weapon has ended, because it's been taken into possession by Officer Terry right as the car got stopped. But doesn't the lying show that his silence had nothing to do with shock? Well, perhaps the jury would hold it against him that he did not tell the detectives what had happened after he'd- and keep in mind, this is after he'd been told he was going to be charged. The jury may very well hold that against him. They may not. Under those circumstances. I don't know. I'm asking the court for an opportunity to allow a jury to decide what happened in this parking lot and decide whether they think Mr. Moore acted reasonably or unreasonably by, among other things, not telling the detectives what had happened at the police station after he was told he was being charged. So what evidence do you proffer at the time of the prima facie showing that it was reasonably necessary for him to keep the weapon after he'd fled the scene and was beyond danger? His explanation was that there was a struggle between Moore and the other fellow, a guy named King. During the struggle, the gun discharged. Apparently, King was struck with a ricocheting bullet, or under circumstances that aren't really clear. The gun dropped. Moore testified that following the struggle, he went to leave, saw the gun on the ground, saw King appearing to reach for it, and felt that he better grab it for his own safety. Otherwise, King might shoot him as he fled. And so why did he have to keep the gun four minutes down the road? He ran and jumped in the car. They drove off. There'd been shots fired. The other folks he was with testified and didn't know what had happened. And did he have to? I think the answer is he didn't have his wits about him to figure out what to do yet. Similar to the individual in the Clark case, Judge Black, who's in the parking lot at that club. Wow, what's just happened here? What do I need to do? Now, the court's nowhere—I understand the court—both of Judge Sutton and Judge Black are expressed in skepticism about Mr. Moore's explanation. I'm just saying it says rare situations. And I think that's why 5 says what it says, only as long as necessary. And then cases say absolutely necessary. So, I mean, I think those two things go together is what my sense is. But when his possession ends—I mean, for instance, like in the Singleton case, the fellow gets the gun and has several hours to deliberate about his course of action. Obviously, that's a greater period of time. The danger's lapsed. Completely different situation. But Moore hasn't—other than, I guess, throwing the gun out the window of the car as they drove from Divas over to Broadway, which I know is a short distance, and the record is not more than maybe perhaps four minutes at most. In that period of time, sure, he could have called the police if they had mobile phones or some means to do so. Sure, he could have thrown the gun out the window. I mean, the word is necessity, right? That's the word. And under your theory of the case, if you accept all of your evidence is true, it was necessary until he got in the car. That's the literal way of thinking about it. The period of time was so short, the events that led to him taking possession, it was not longer than necessary, given this specific and unique context. Is realistic alternative similar to the individual in Clark? Seemed to me to be throw the gun out the window of the car or drive immediately to the police or call the police or something like that. And in that short period of time, if Clark can't be faulted for taking similar action, neither should Mr. Moore. And he should have been able to have the jury consider this defense. All right, well, thank you. You get your rebuttal here from the government. May it please the court. Elizabeth Stigler on behalf of the United States. Jafari Moore was not entitled to a jury instruction on the justification defense because he failed to get rid of the firearm as soon as a safe opportunity arose. That's the language from the Singleton court. And Your Honor, Judge Sutton, you used the language from the Newcomb court that a defendant cannot maintain possession of the firearm. He is not entitled to the justification defense unless he maintained possession no longer than absolutely necessary. And in this case, Jafari Moore reached a safe place once he was in the car and away from the deepest parking lot. And at that point, in order to be entitled to the justification instruction, he had to get rid of the firearm. That's what the Singleton court says. So was he supposed to throw it out the window? That would have been one option, probably not the most responsible option. I was going to say, I mean, it seems like a funny position for the government to take. You know, yeah, this could be a neighborhood with children, pitch it out the window, broad daylight, bunch of kids go grab the gun. That's right. Well, in this case, it was 3 in the morning. But I think if you look at a literal interpretation of that language, as soon as a safe opportunity arises, the defendant has to get rid of the firearm. There are cases where a court says, when they're looking at the alternatives that the defendant had, he could have thrown it in the bushes. So courts actually do sort of make this analysis. That probably wouldn't have been the most responsible way to get rid of a firearm. But I think that we might not be here if the defendant had chucked it out the window. The record is not— to do—basically prompt a confession. In other words, it's a lot of peril. Certainly it's the right thing to do as a matter of morality. Call the police. I've got this gun. What do you want me to do? Here's how I got it. And so while that's a good thing to do, it has peril when it comes to the criminal process, right? Because the government might say you waited too long, and now we're going to charge you with felon possession, which would seem astonishing. But isn't that— I think what I understand you to say is that if the law requires a defendant to tell on himself, to say I have a gun, then that seems strange because we're asking a defendant to sort of self-incriminate here. Two things about that. First, if he really does have a justification, he's not self-incriminating. But second of all, I think that when you look at the cases here, it's clear that this requirement that a defendant not maintain possession of the firearm any longer than absolutely necessary does require that a defendant tell on himself and get rid of the firearm, tell the police that he has a firearm. You raise a good point in that— Has any court talked about these Fifth Amendment implications? Not that I could find. We're talking about—we're not necessarily talking about a defendant's right to remain silent. We're talking about—we're looking at whether or not he meets this narrow qualification of being entitled to a justification defense that would entitle him to be acquitted if the jury believed it. And I want to talk about the case law here. Not every emergency situation is going to end with the arrival of the police. And we submit that this emergency situation ended before the police ever got on the scene. He should have gotten rid of the firearm while he was in the car. He even admits on cross-examination that he had time to call the police. But when an emergency situation ends with the arrival of the police—and this goes to your question—what a defendant does upon arrival of the police is key. And Mr. Abel talked about Clark, the Clark case. But what he failed to mention was that when the police arrived on the scene, the defendant actually said that he had a firearm. He proactively told the police that he had a gun. And if you look at the court's language in Clark, it shows that the key time when an emergency situation ends with the police arrival, the key time that we're supposed to look at is arrival of the police to when the defendant tells the police that he has the firearm. It says between the moment when the danger ended upon the arrival of the police, when the emergency situation ended, and when he alerted the police to his possession of the way to otherwise dispose of the gun. Well, isn't that a question of fact? The government concedes that he had the firearm for a length of time. Is that correct? He did have the firearm for, we say, too long. So the length of time is in question, is it not? The exact length of time is not clear from the record. I would agree with that. And this is the essential element of his defense. So we're speculating, that is, the government is speculating as to how long he's had it. Well, isn't that a question that perhaps a jury should determine after hearing all the evidence? No, Your Honor, and here's why. A defendant has to put forth some evidence, even if it's of doubtful credibility, on each element of the justification defense in order to be entitled to the instruction. And we submit that he did not put on some evidence on this fifth element to be entitled to this instruction. So this was for the district court to decide whether or not he made out a prima facie case. And then it goes to the jury to hear all of the facts, not just the defendant's version, but the government's version as well, and then judge credibility. I want to talk about, let's assume that he wasn't required to. You said it's not clear how long he held the gun beyond the confrontation, physical confrontation. But it's not clear, but there's a range in which, what's the range of debate between the government and the defendant? Well, the car ride, the record says, witnesses say anywhere between two and ten minutes. So the car ride was anywhere between two and ten minutes. We know that he was stopped two miles from Divas. But with the traffic stop, the record just doesn't give us an amount of time. There's no witness says an amount of time. But I want to talk about the sequence of events in the traffic stop. Because I submit to the court that it was a prolonged stop. Maybe I'm confusing cases, but isn't this the one where the first officer waits for backup? That's correct. So there's, so it's a minimum of two minutes. And then that's the initial stop. That's correct. And we don't, does the record show the time it takes for the second car to come? It doesn't. But the record shows what happened at the traffic stop. So we have the initial traffic stop where the officer is telling all four occupants to show their hands. And what's not, I concede that we have to take the defendant's version of the events. But what's not disputed at the, when you look at the trial record, is that the officer had to continuously tell this defendant to show his hands, put his hands on the dashboard, on the headrest. Then, judge Sutton, you're correct, the officer had to call for backup. So they have to wake up, wait for the backup to get there. Then once the backup arrives, they one at a time remove each passenger from the vehicle. And for officer safety, they cuff them, frisk them, and put them on the curb and separate them. And even according to the defendant's own testimony, he's not even the first one out of the car. They remove Jennifer Bates, they remove the driver, then they remove the defendant. After they remove these passengers from the car, they cuff them and frisk them. Then we wait for the bartender to get there to make a positive identification of Jafari Moore. At that point, they search the car and they find the gun. And what also is not disputed in the trial record is that the gun was found under the floorboard and sort of pushed up under the driver's seat. What is disputed is whether or not at that point, officer Terry asked the occupants, does anybody know anything about this gun? It's interesting because Moore puts on a defense and calls witnesses on his own behalf. And even his own witnesses say that the officer did ask. But let's just assume that the officer didn't even ask. We have this stop where the officer has to say repeatedly to show me your hands. Calls for backup. We wait for backup. We get the occupants out and cuff them and frisk them. Then we wait for the bartender to get there. So I submit to the court that it's a prolonged stop in which the defendant, according to the case law, had an obligation to tell the court that there was a firearm. At that point, he's the only person who knows that there's a firearm in the gun. I mean, excuse me, a firearm in the car. And how do you, we're back to an emergency situation that ends with the arrival of the police. How do you get rid of the gun? And I guess you could give the gun to the police. But I think police officers would be a little bit leery of you actually sort of handing them a gun. What's that standard of review as it relates to this one issue? The standard of review is de novo. No, is it de novo or abuse of discretion? Well, it's de novo. I believe it's de novo. But here's why. The standard for whether or not a court instructed the jury improperly is abuse of discretion. But the standard for whether or not the district court made the proper decision about the Prima Fascia case and whether or not a defendant made out a Prima Fascia case to be entitled to the jury instruction is de novo. So we concede and agree with the defendant that the proper standard of review is de novo. So how do you get rid of a firearm when the police are on the scene? I guess you could hand it to them. But probably the best thing, the best way to get rid of a firearm is to tell the police that you have it. And the case law makes that clear. In Clark, the case that Mr. Abel talked about, the defendant said, I have a firearm. In Newcomb, the Newcomb court cites two cases, Pauliello and Smith. It's a First Circuit case and a Third Circuit case. And they say, Newcomb is an interesting case because it's kind of in the middle. And I think that that's the best case for the defendant. So I want to address it. This is the ammunition case? That's right. We have a plethora of cases where defendants that are approached by the police, they flee or they lie. And all the courts say, you're not entitled to the justification defense because you kept the firearm longer than necessary. You kept the firearm longer than when the emergency situation ended upon the arrival of the police. Then you have cases where, like Clark, where upon the arrival of the police, the defendants affirmatively say, I have a firearm. And the courts say, you're entitled to the justification defense because you didn't maintain possession any longer than absolutely necessary. Newcomb is kind of in the middle. The facts aren't super clear exactly what happened upon arrival of the police. But what's the time gap when the police find him with the ammunition still in his pocket after he's given up tracking down Lewis or whatever it is? That's what we don't know. The case just doesn't say. But what we do know and how Newcomb is different than this case is that the police were actually on the scene to some extent watching these events unfold. It's not clear if they saw it all. But they at least saw the three people walking down the alley. And they saw either Newcomb or whoever this other guy was, Lewis. There's a debate about who it was. But it doesn't really matter. I thought at 1138 it says only moments after Lewis ran off. Right. But what's not clear is how long, how much time passed between when the police stopped Newcomb and found the ammunition. I think it's on the, I can't remember exactly where it is. I'm quoting from it. Possess the ammunition only for the duration of the emergency situation. So that seems to be key. But before that, it says possess it for only moments after Lewis ran off. What happened after Lewis ran off is when the police stopped him. Does it say possessed it for only moments? Yeah, I thought. Yeah, that may be right. But I think it's still unclear from the case exactly how much time passed from when the police approached Newcomb and found the ammunition. We don't know how long the police interaction was before they found the ammunition. But we do know, and it was probably moments. I think it was probably a really short amount of time. But what we do know, the only time, the exact time frame that's mentioned in Newcomb is this 10 second time frame. And after the police see someone discard the firearm in this couch in the alley, the case says 10 seconds after the police see the discarding of the firearm, the police approach the three, pat down Newcomb, frisk Newcomb, and find the ammunition. That's unlike this case in that we have a two to 10 minute car ride. And then we have a prolonged- Can I just interrupt a little bit? Sure. I'm just wondering, I don't understand why you can't say what Newcomb says. It's only as long as the emergency situation lasts. The key point is not minutes, seconds. It's emergency situation. If you still have the emergency situation, you're good. If you don't, problem. So I guess I'm thinking that the clock doesn't have anything to do with this. An emergency situation could last an hour. I think that's right. And in this case, the emergency situation ended when he got in the car and got out of the Divas parking lot. So the United States position is that he was obligated to get rid of the firearm in the car. But even if we say there's an exception if the defendant's too scared to do that, or if he's in shock, even if there's some exception for that, which I don't think the case law supports, he was obligated to tell the police that he had a firearm during the traffic stop, during this prolonged traffic stop. Unless there are further questions, I'll ask the court to affirm. Thank you. Thank you. Appreciate it. Mr. Abel, you've got your rebuttal. Your Honor, let me talk about Newcomb. There were two different versions of events given there. The police officer testified that he saw the taller man, turns out to be Newcomb, this is on 1131, put a dark object approximately two feet long into a couch that had been abandoned in the alley, and immediately stopped and said, what's going on? Found the gun stuck in his couch in the alley after he'd followed Newcomb and the rest of his party down. The defense gave a different version, that they had disarmed Benson. And Louis Benson made some threat about he was going to, he's going to go still get this other fellow, Newcomb tried unsuccessfully to catch Louis, and then rejoined the other folks in his party in the alley, and then the police show up. And there's no indication that Mr. Newcomb at that point gave an explanation, as the government is urging here. The court didn't indicate Mr. Newcomb was required to tell on himself and explain that he'd gotten this gun from Benson, and there's no discussion to that effect. And the Newcomb decision. Well, it was because ammunition caught the gun, right? Well, the police officer testified he'd seen him carrying a gun and stuck it under the couch. I thought it was possession of ammunition, maybe I'm wrong. But in any event, there's still no confession that here's how I got it. And the government's suggesting here that that requirement should be imposed upon Moore while conceding that's not a good idea for him to have thrown the gun out of the car, or to have reached under a car seat with a police officer outside to grab the gun. That's creating an unsafe situation there. When he's, an emergency situation, I think, is still going. He's clear of King. King can't shoot him with it anymore. But the reasonableness of his conduct should be something for a jury to be able to pass on. I mean, Newcomb, I'm reading from it. It's, he possessed it. So the emergency related to the conflict with Lewis Benson, and he kept the ammunition only moments after the departure of Lewis Benson. Furthermore, the emergency situation had only ended moments before with the departure of Lewis. So can you say this is only, can we really say this case is moments? And can we really say there was still an emergency situation while he's in the car? Well, of course, Moore is in a different situation because unlike Mr. Newcomb, Moore's life has been threatened. Mr. Newcomb was intervening. His life had not been placed in danger, at least as directly as Moore. It's not a safe situation. I don't understand why the nature of the emergency, I guess I thought the point was the courts are trying to manage this doctrine in a way that allows it to be used sensibly in places where it makes sense to use it, but that you draw a line so it doesn't come up in every single felon possession case. I mean, I think that's what's going on here. And the way to do that is as long as the emergency situation's going on, fine. And only moments immediately seems to be what they're getting at. But when the emergency situation ends, which clearly happened here once you're in the car, how can you say it's only moments? I'd argue that's a fact issue for the jury. Was Mr. Moore still rattled by, was his judgment still infected by this emergency situation? The defense that you're only eligible for it in rare situations will always be instructed. Because what you're saying is you want to say it's not limited to the emergency situation when it ends. You want to have an inquiry that says, did my client behave reasonably in this setting? Which I get, that's the way I would push the point. But if you say it's did my defendant behave reasonably in this situation, there's just no way the doctrine only applies, or only goes to a jury in rare situations. I just don't understand how that could be true. Well, I think the jury could properly find that his act, that he did not possess it longer than reasonably necessary. A grant, they'd left the parking lot and driven some few minutes away after his life had been threatened.  But his possession, ability to exercise dominion and control over that gun ends when they're stopped by the police. Isn't it a fact situation that the government itself now has determined how long your client has had the gun? They made the determination, they admitted he had it, and then they made a determination it was only for a short time. Yes, sir. I think the testimony- What's our standard of review? It's a de novo review as to whether the defendant presented a prima facie case as to the elements of the defense. And Judge Keith, I'd represent to you that the evidence indicated the car was stopped, Moore's ability to exercise dominion and control possession over this weapon ended at no more than four minutes after the incident where his life had been threatened. And a jury could fairly find he did not possess it longer than absolutely necessary given this unique circumstance. Thank you all very much. Thanks to both of you for your helpful legal briefs and oral arguments. Interesting case. We appreciate your work and the case will be submitted. The clerk may-